UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN RAIN, AS DULY APPOINTED PERSONAL REPRESENTATIVE OF THE ESTATE OF ELINOR G. CRANDALL, DECEASED, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>CONNECTICUT GENERAL CORPORATION, INSURANCE COMPANY OF NORTH AMERICA, LIFE INSURANCE COMPANY OF NORTH AMERICA, and TOWERS ADMINISTRATORS, INC.,<br><br>    Defendants, | Civil Case No. 3:17-30115-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION FOR
PROTECTIVE ORDER PROHIBITING THE DEPOSITION OF MARK JACKSON
(Dkt. No. 100)

I.    Relevant Background

Karen Rain ("Plaintiff"), bringing suit in a representative capacity, also seeks to represent a class of persons who allege that the defendant insurers and their claims administrator have improperly denied benefits to her decedent and potential class members or their decedents under certain long-term care insurance policies ("the Subject Policies"). The complaint alleges that the defendants deny all benefits for stays at assisted living facilities and exclude from the definition of "medically necessary care" coverage for assistance with activities of daily living (Compl., Dkt. No. 1 at 2). The defendants no longer sell the Subject Policies at issue in this case.

1

The parties have been engaged in discovery for some time. The defendants represent that they have produced a substantial number of documents, including the claims files for putative class members. In connection with this production, they provided Plaintiff's attorneys with a privilege log that identified thirty-eight documents that were withheld or redacted based on the attorney-client privilege or work product protection. Several of these documents were communications to or from Mark Jackson ("Jackson"), whom, the defendants represent, is an in-house corporate counsel whose responsibilities include providing "legal opinions regarding the interpretation of the terms of the policy" at issue in this case "under applicable state law." Jackson, say the defendants, also assists in responding to attorney demand letters and threats of litigation raised by policyholders and their attorneys (Dkt. No. 101 at 5).

Depositions taken by Plaintiff revealed that, at this point, Jackson and Jessica Smith, a non-lawyer, are the only employees of the defendants who are involved in responding to claims on this closed book of business (Dkt. No. 126). Deposition testimony was to the effect that Jackson advises on initial claims determinations as well as appeals from claims denials for the Subject Policies and that Jackson personally drafted the defendants' response to Plaintiff's pre-suit demand letter sent pursuant to Mass. Gen. Laws. ch. 93A ("Chapter 93A"), although he had a claims representative sign the letter (Dkt. No. 108 at 2).

After Plaintiff learned that Jackson prepared the response to Plaintiff's Chapter 93A demand letter, Plaintiff served a notice to take Jackson's deposition (Dkt. No. 101-9). The defendants indicated their objections. After the parties conferred in compliance with Fed. R. Civ. P. 37(a) and could not resolve their disagreement, the defendants filed the instant motion for a protective order on the grounds of attorney-client privilege and work product protection. The defendants argue that Plaintiff has not made the showing required for taking the deposition of an

opposing attorney because they have not exhausted other means of obtaining the information they claim to need and because the information they seek is privileged or is protected work product.  For her part, Plaintiff contends that Jackson was functioning in a business capacity as a claims representative, particularly in drafting the defendants' response to Plaintiff's Chapter 93A demand letter, and that Plaintiff is entitled to depose him to inquire about the basis for the defendants' position in their response to Plaintiff's demand letter, in which the defendants made no offer of settlement (Dkt. No. 108 at 2).

II.     Discussion

While the question of whether Jackson was providing legal or business advice to the defendants is disputed, it appears undisputed that Jackson is and has been at all relevant times employed as an in-house attorney for the defendants whose assigned responsibilities included participating in responding to claims for benefits under the Subject Policies and defending (including in litigation) the defendants' benefits denials under those policies.

> In deciding whether a deposition of opposing counsel, including in-house counsel, is appropriate, courts often use the test adopted by the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  *See Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998).  Under that test, depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that (1) no other means exists to obtain information other than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.  *Shelton*, 805 F.2d at 1327 (citation omitted).  The crucial factor in determining whether the *Shelton* test applies is the extent of the lawyer's involvement in the pending litigation.  *Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, No. A-09-711-LY, 2010 WL 5174366, at *3 (W.D. Tex. Dec. 13, 2010); *see also Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220 (D. Neb. 2006).

*Abiomed Inc. v. Maquet Cardiovascular LLC*, Civil Action No. 1:16-10914-FDS*,* 2017 WL 11625640, at *2 (D. Mass. Oct. 6, 2017).[1]

"'The attorney-client privilege … protects communications made between an attorney and a client for the sake of obtaining legal advice' and 'extends to communications made to a representative of the attorney for the sake of obtaining the attorney's advice.'" *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47 (D. Mass. 2007) (quoting *City of Worcester v. HCA Mgmt. Co., Inc.*, 839 F. Supp. 86, 88 (D. Mass. 1993)). "The work product doctrine, codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that items prepared in anticipation of litigation are generally protected from discovery by an opposing party." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 26(b)(3)). "[O]nly work done in anticipation of or for trial … is protected." *U.S. ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020). "Rule 26(b)(3) establishes two tiers of protection. Fact work product is discoverable only upon a showing of 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without undue 'hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. at 381 (quoting Fed. R. Civ. P. 26(b)(3)). "'Core' or 'opinion' work product, which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection." *Id.* (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)). "Opinion work product is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Id.* at 382 (quoting *In re Cendant*, 343 F.3d at 663).

---

[1] The court in *Abiomed* observed that the First Circuit has not explicitly adopted the *Shelton* test but has used a similar test for purposes of deciding whether opposing counsel can be required to testify at trial. *Id.*, 2017 WL 11625640, at *2 n.3 (citing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)).

Establishing the scope of protection under the attorney-client privilege and work product protection for in-house counsel can be complicated because the work of in-house attorneys often consists of a combination of legal and business tasks. *See Abiomed*, 2017 WL 11625640, at *3. "[T]he rendering of business or technical advice unrelated to any legal issues" is not protected by the attorney-client privilege or the work product doctrine. *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citing *Pacamor Bearings, Inc. v. Minebea Co. Ltd.*, 918 F. Supp. 491, 510-11 (D.N.H. 1996)). Nonetheless, as long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely because it also dealt with matters that might more fairly be characterized as business matters. *See id.* (quoting *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)).

A threshold question is whether Jackson was providing legal or business advice when he wrote the defendants' response to the Plaintiff's Chapter 93A letter and when he communicated with claims representatives about benefits available to insureds under the Subject Policies. The Plaintiff relies on cases from the Western District of Washington which hold that "[u]nder Washington law … there is a presumption of 'no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process.'" *Canyon Estates Condo. Assoc. v. Atain Specialty Ins. Co.*, Case No. 2:18-cv-1761-RAJ, 2020 WL 363379, at *1 (W.D. Wash. Jan. 22, 2020) (quoting *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 246 (Wash. 2013)); *see also Bagley v. Travelers Home & Marine Ins. Co.*, CASE NO. C16-0706 JCC, 2016 WL 4494463, at *2 (W.D. Wash. Aug. 25, 2016) (quoting *Cedell*, 295 P.3d at 246) (explaining that the insurer may overcome the presumption by showing that the attorney was not engaged in investigating, evaluating, or processing claims but was providing the insurer with advice as to its own potential liability).

Plaintiff has not pointed the court to any comparable authority under Massachusetts law, and the court has not found any. Indeed, another session of this court has ruled that "confidential communications between claims personnel at [the insurance company] and attorneys and their representatives in the defendant [insurer's] in-house legal department" were protected by the attorney-client privilege when "the communications were made for the purpose of seeking and providing legal advice in connection with [the insurer's] responses to plaintiff's counsel's requests for information and assertions regarding the plaintiff's right to benefits under the applicable insurance policy." *Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. at 47.[2] *See also St. Paul Guardian Ins. Co. v. Welsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4777337, at *2-4 (N.D. Ill. Oct. 13, 2021) (granting the defendant insurer's motion for a protective order prohibiting the deposition of the defendant's in-house attorney whose role was to advise the insurer's claims examiners).

Plaintiff's primary purpose in deposing Jackson is to ask questions about the basis for the defendants' written response to the Plaintiff's Chapter 93A letter.[3] Plaintiff claims that Jackson's preparation of the letter shows that he is involved in the claims process rather than in providing legal advice to the defendants. The response letter, however, tends to show that Jackson was providing his employer with legal advice about its potential liability in response to a

---

[2] In *Jefferson Pilot*, which was an ERISA case, the court went on to find that a fiduciary exception that disables ERISA fiduciaries from asserting attorney-client privilege against a plan beneficiary as to matters affecting plan administration, including benefits decisions, applied to defeat the insurer's claim of attorney-client privilege. *See Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. at 47-53. Because Plaintiff's claims are state law breach of contract and bad faith Chapter 93A/176D claims, the exception for ERISA fiduciaries does not apply.

[3] So far as the court is aware, Plaintiff does not dispute that Jackson's preparation of the defendants' response to Plaintiff's Chapter 93A letter was a document prepared in anticipation of litigation. As the defendants point out, Plaintiff's Chapter 93A letter is identified as a thirty-day pre-suit demand (Dkt. No. 101-5 at 1).

claim that the decedent was receiving medically necessary treatment in a licensed nursing home as those terms are defined in the policy and by Massachusetts law.  The defendants' response to Plaintiff's Chapter 93A letter sets forth the defendants' interpretation of the policy provisions, their position with respect to how various care facilities are defined under the applicable Massachusetts statute and regulations, and whether the policy definition of medically necessary services applies to certain activities of daily living with which the insured received assistance in the setting in which the insured resided (Dkt. No. 101-6).  In other words, the Chapter 93A response letter appears to be a legal analysis of coverage.  *Cf., e.g., Masonic Temple Assoc. of Quincy v. Patel*, 185 N.E.3d 888, 894 (Mass. 2022) ("'The interpretation of an insurance policy is a question of law.'" (quoting *Wilkinson v. Citation Ins. Co.*, 856 N.E.2d 829, 833 (Mass. 2006)).  Plaintiff's stated purpose for taking Jackson's deposition – to ask questions about the defendants' reasons for denying coverage to Plaintiff and other similarly situated individuals – would by definition involve inquiry into Jackson's mental impressions, conclusions, opinions, or legal theories developed in his capacity as counsel for the defendants with respect to interpretation of the terms of the long-term care policies and relevant provisions of Massachusetts law.  Thus, Plaintiff would be questioning Jackson about opinion work product that is only discoverable in unusual circumstances.

       Plaintiff's reliance on the case of *Rhodes v. AIG Domestic Claims, Inc.*, 20 Mass. L. Rptr. 491 (Mass. Super. Jan. 27, 2006) is misplaced.  Plaintiff has not shown that Jackson was involved in the factual investigation and evaluation of the Plaintiff's claim that preceded the threat of litigation, an activity that would be deemed performed in the insurer's ordinary course of business.  *See Rhodes*, 20 Mass. L. Rptr. 491, at *3-4.  Furthermore, the *Rhodes* case is distinguishable from the case at bar.  *Rhodes* was a pure Chapter 93A/176D case.  *After* a trial at

7

which the jury awarded the plaintiffs damages which greatly exceeded the pretrial settlement offers the insurers had made, the plaintiffs brought a separate suit alleging that the insurers had not acted reasonably and in good faith in handling the plaintiffs' underlying tort claims. *Id.* at *1. Justice Gants held that the plaintiffs required access to the insurers' claims files because the plaintiffs had to prove that the insurers knew that liability was reasonably clear, yet failed to make a reasonable offer of settlement. *Id.* at *5. Even in *Rhodes*, Justice Gants stated that plaintiffs bringing a bad faith claim "would not be permitted to depose the insurance company attorney to ask him his reasons for advising his client to make the settlement offer" alleged to have been made in bad faith unless the client sought to present an advice of counsel defense. *Id.* at *7. To the extent Plaintiff claims she is entitled to depose Jackson because her complaint asserts Chapter 93A/176D claims, "[t]hose chapters do not … impose liability in cases of good-faith dispute over insurance coverage in which liability is 'not reasonably clear.'" *Hampshire House Corp. v. Fireman's Fund Ins. Co.*, 557 F. Supp. 3d 284, 301 (D. Mass. 2021) (quoting *Guity v. Commerce Ins. Co.*, 631 N.E.2d 75, 77 (Mass. App. Ct. 1994)). Under *Shelton*, before Plaintiff is permitted to depose Jackson, there should be some persuasive showing (beyond the contention that the Chapter 93A letter misquoted some portion of the policy) of an unfair settlement practice as distinguished from a coverage dispute. *See Guity*, 631 N.E.2d at 78 (listing examples of bad faith denials of coverage); *see also Abiomed*, 2017 WL 11625640, at *2 (noting that the *Shelton* test requires the party seeking to depose an opposing attorney to demonstrate that the information sought by the deposition is crucial to the preparation of her case).

Finally, *Shelton* counsels that, before deposing opposing counsel, a party must show that she has exhausted all other sources of non-privileged information. *See Shelton*, 805 F.2d at

1327. As the defendants point out, to the extent that Plaintiff seeks to discover the basis of the defendants' denial of her claims, there are other discovery options that may be sufficient and should be exhausted before Plaintiff seeks to depose opposing counsel (Dkt. No. 101 at 16-17).

Plaintiff is entitled to discover the basis of the defendants' denial of her claim. She may ultimately be able to show that to do so, she must take Jackson's deposition. She has not satisfied her burden at this time. In view of the difficult privilege issues that will arise in connection with any such deposition, along with the concern that Plaintiff will have little to ask Jackson that is not apparent from the face of the defendants' written response to Plaintiff's Chapter 93A letter, the court grants the defendants' motion for a protective order prohibiting the deposition of Jackson. This order is without prejudice to Plaintiff renewing her request for Jackson's deposition on a showing that satisfies the *Shelton* factors.

III.   Conclusion

For the foregoing reasons, Defendants' Motion for Protective Order Prohibiting the Deposition of Mark Jackson is GRANTED. This order is without prejudice to Plaintiff filing a subsequent motion to compel Jackson's deposition on a showing that complies with this Memorandum and Order, including explaining the nature of the inquiry Plaintiff proposes to direct to opposing counsel.

It is so ordered.

Dated:  June 23, 2022                                        Katherine A. Robertson
                                                             KATHERINE A. ROBERTSON
                                                             U.S. MAGISTRATE JUDGE